**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMANUEL GALVEZ,<br>*Plaintiff*,<br>v.<br>MIDLAND CREDIT MANAGEMENT, INC., and JOHN DOES 1 TO 10,<br>*Defendants*. | No. 25-cv-14985 (MEF)(LDW)<br><br>**OPINION AND ORDER** |

**Table of Contents**


I. Background
- A. The Allegations
- B. Procedural History
- C. The Motion

II. Standing

III. The Entire Controversy Doctrine
- A. The Question Is Open
- B. Kaselaan
- C. After Kaselaan
  - 1. Judgment Needed
  - 2. Judgement Not Needed
- D. The Prediction

IV. Conclusion and Next Steps


* * *

A debt-collection company sued a New Jersey man in state court, to collect money that he allegedly owed.

The man thought this was improper --- mainly because the collection company had bought the debt from two other companies,

and these did not have the license that New Jersey law is said to require.

But rather than press this as a defense in the state court case, the man filed this federal lawsuit.

The debt-collection company has now moved to dismiss, arguing that the state case bars this one.

The motion raises complex issues, and a stay of this case may be appropriate --- to allow the parties to comprehensively resolve their dispute where it first got going, in state court.

* * *

## I. Background

### A. The Allegations

A company[1] is "in the business of purchasing . . . defaulted credit accounts," and then trying to collect on them. See Complaint and Jury Demand ("Complaint") (ECF 1) ¶ 18; see also id. ¶¶ 19-22, 27, 47.

The company concluded that a New Jersey man[2] was past due on certain debts. See id. ¶¶ 23, 30-32; see also Complaint, Exhibit B ("Exhibit B") (ECF 1-2).

So it mailed him a collection letter. See Complaint ¶ 24; Exhibit B. And then sued him in New Jersey state court. See Complaint ¶¶ 46, 48.

The New Jersey man came to believe this was unlawful. See id. ¶¶ 1-3, 41, 43, 72, 81-83, 87-88, 90-91, 93-94, 119-21, 123, 125. Because the debt had earlier been handled by an entity that did not have the right license. See id. ¶¶ 36-38. And because the company relied on a third-party to send off the collection letter, which, the man thought, amounted to a violation of his privacy. See id. ¶¶ 58-63, 66-72.

### B. Procedural History

In light of the above, the man filed this lawsuit against the collection company, around two months after the state-court case

[1] Midland Credit Management, Inc.

[2] Emanuel Galvez.

kicked off. See Motion to Dismiss and For Sanctions ("Defendant's Brief") (ECF 7-1) at 3; Plaintiff's Memorandum of Law in Opposition to Defendant's motion to Dismiss and For Sanctions ("Plaintiff's Opposition") (ECF 11) at 2-3.

From here, call the New Jersey man "the Plaintiff" and the company "the Defendant."

The Plaintiff's lawsuit presses a claim under the federal Fair Debt Collection Practices Act. See Complaint ¶¶ 109-21. Plus some state-law claims. See id. ¶¶ 75-108, 122-32.

### C. The Motion

The Defendant has now moved to dismiss this case on two grounds.[3]

First, because the Plaintiff does not have Article III standing. See Defendant's Brief at 4-5.

And second, because the state court case bars this one, under New Jersey's entire controversy doctrine. See id. at 5-6.[4]

* * *

Work through the Defendant's standing argument in Part II. And its entire controversy argument in Part III.

There is standing, the Court concludes. But the entire controversy question may be difficult. A stay of this case in favor of the first-filed state-court case may be the right way to go.

## II. Standing

If the Plaintiff has no Article III standing, the Court has no power to hear this case. See Nat'l Org. of Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994); Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).

---

[3] On the precise nature of the motion, see Galvez v. Midland Credit Mgmt., 2026 WL 1975169, at *1-2 (D.N.J. July 8, 2026).

[4] There was a complexity as to whether the entire-controversy issue could be taken up here by the Court. See Galvez, 2026 WL 1975169, at *1-2. That is now in the rear-view mirror. The issue can be considered.

So standing is the place to start. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

The first requirement of Article III standing is an injury. See Township of Piscataway v. Duke Energy, 488 F.3d 203, 2-8 (3d Cir. 2007) (cleaned up).

And per the Defendant, the Plaintiff has not alleged one. See Defendant's Brief at 4-5; Letter Brief in Reply to Motion to Dismiss and For Sanctions ("Defendant's Reply") (ECF 14) at 3-7.

But the Plaintiff was sued by the Defendant in state court, and ran up costs there defending himself. He hired a lawyer. See Plaintiff's Opposition at 3; see also Complaint ¶ 50. He paid fees. See Plaintiff's Opposition at 3 (citing Complaint ¶¶ 50, 57).

Being required to make an out-of-pocket payment is a "monetary harm." TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021). And dollars-and-cents harms --- those "readily qualify as concrete injuries under Article III." TransUnion, 594 U.S. at 425.

And in keeping with this idea, "[t]he expense of hiring a lawyer to defend a baseless or illegal lawsuit is a concrete injury." Choice v. Kohn Law Firm, S.C., 77 F.4th 636, 641 (7th Cir. 2023) (Hamilton, J., dissenting);[5] see also Levy v. Law Offs. of J. Henry Nierman, 2024 WL 2274100, at *3 (S.D.N.Y. May 20, 2024) (concluding that the plaintiff "demonstrated a concrete harm flowing from the expense he incurred in retaining counsel to defend . . . against" a legal action); cf. Fleming v. ProVest Cal. LLC, 2021 WL 6063565, at *7 (N.D. Cal. Dec. 22, 2021) (collecting pre-TransUnion cases holding "that legal costs spent defending debt collection actions qualify as more than the mere risk of harm").[6]

---

[5] The year after it was handed down, the Seventh Circuit "arguably" adopted Judge Hamilton's dissent. See Henry v. Collection Pros., Inc., 2024 WL 3757083, at *5 n.4 (N.D. Ill. Aug. 9, 2024) (citing Patterson v. Howe, 96 F.4th 992, 998 (7th Cir. 2024)).

[6] Things do not work the same way when the shoe is on the other foot. A state-court defendant is backed into spending money to defend herself. But a state-court plaintiff spends money on a lawsuit she chose to start --- and therefore cannot parlay her

Injuries must be concrete to count for Article III purposes. And they also must be analogous to the sorts of "traditional" harms that our law "has aimed to protect against." McQueen v. Credit One Bank, N.A., 769 F. Supp. 3d 321, 325 (D.N.J. 2025).

That box is checked, too.

The harm of being wrongly sued is sometimes addressed by the tort of malicious prosecution, and sometimes by the tort of abuse of process. See Choice, 77 F.4th at 641 (Hamilton, J., dissenting) (noting this).

And these torts are no late arrivals on the scene. Each is "traditional" --- hundreds of years old. See, e.g., 3 William Blackstone, Commentaries on the Laws of England *126-27 (1768) (malicious prosecution); Thomas M. Cooley, A Treatise on the Law of Torts or the Wrongs Which Arise Independent of Contract 187-90 (1879) (malicious civil suits and malicious abuse of process).

And each tort "has long been burrowed deep in American law." Church v. Collection Bureau of Hudson Valley, Inc., 704 F. Supp. 3d 521, 527 (D.N.J. 2023). Not a here-and-there part of the law, but a ubiquitous component of it, applied in each corner of the country.[7]

---

litigation spending into federal-court standing. See, e.g., Steel Co., 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); Hole v. Tex. A&M Univ., 360 F. App'x 571, 573 (5th Cir. 2010) ("a party who voluntarily initiates litigation and does not win a judgment, cannot then sue to recover attorney's fees as a compensable injury").

[7] The Defendant responds that "[n]othing pled in [the] Plaintiff's [c]omplaint even comes close to resembling any of the elements necessary [for making out the tort of] malicious prosecution." Defendant's Reply at 7 n.2. But a plaintiff's alleged injury needs comparing "to a 'traditional' harm," McQueen, 769 F. Supp. 3d at 325 --- here, the harm of being sued on an allegedly wrongful basis. The injury does not get compared "to a 'traditional' cause of action." Id. (emphasis deleted). Standing analysis "is not an exercise in element-matching." Barclift v. Keystone Credit Servs., LLC, 93 F.4th 136, 146 n.4 (3d Cir. 2024).

And though it is unpublished, a recent Third Circuit opinion cinches things. Expenses "associated with responding to . . . abusive process," the court of appeals has held, can constitute an injury sufficient to ground standing. See Grasso v. Katz, 2023 WL 4615299, at *2 (3d Cir. July 19, 2023) (cleaned up). When a plaintiff has spent money responding to an allegedly malicious or abusive civil suit, "[t]he injury in fact is plain enough." Id.

## III. The Entire Controversy Doctrine

The Plaintiff has standing here, based on his having been sued by the Defendant. See Part II.

So take up now the Defendant's argument that this case should be dismissed --- because it is barred under New Jersey's entire controversy doctrine, on account of the case that was brought in state court.[8] See Defendant's Brief at 5-6; Defendant's Reply at 7-10.

* * *

Before getting started with the analysis, some quick background.

Where it applies, the entire controversy doctrine allows[9] for the dismissal in court 2 of a claim that was brought (or should have been brought) in court 1. See Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019).

The idea is that one controversy --- all of it, the controversy in its "entire[ty]" --- should go forward in one court. Dismissal in court 2 is the way to make that stick.

To figure out if there is "one controversy for purposes of the doctrine, the central consideration is whether the claims . . .

[8] Why look to New Jersey preclusion law? "A federal court looks to the law of the adjudicating state to determine . . . preclusive effect." Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002).

[9] "Allows" because there is some play in the joints. "The entire controversy doctrine [is] an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (cleaned up).

arise from related facts or the same transaction or series of transactions." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995); see also Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting DiTrolio); 279 Veterans LLC v. Vill. Green Assocs., LLC, 2024 WL 1295244, at *4 (N.J. Super. Ct. App. Div. Mar. 27, 2024) (quoting Wadeer).

Here, the parties disagree as to whether this test is met. See Defendant's Brief at 5-6 (met);[10] Plaintiff's Opposition at 19 (not met).

But the Court cannot readily resolve that question --- because, first, there is a more basic debate, as to whether the entire controversy doctrine can apply here at all.

* * *

Per the Plaintiff, the entire controversy doctrine cannot operate in this case --- because the New Jersey state court has not yet handed down its final judgment. See Plaintiff's Opposition at 22 ("The Entire Controversy Doctrine requires a final judgment on the merits.").[11]

For its part, the Defendant sees things the other way. There is no judgment, true. But the entire controversy doctrine applies anyway. See Defendants' Reply at 9-10 ("[The] Plaintiff's argument that the Entire Controversy Doctrine does not apply because there is no final judgment is . . . meritless and has been expressly rejected by New Jersey courts.").[12]

---

[10] In support of its argument, the Defendant notes that the Plaintiff's answer in the New Jersey case "raised, as an affirmative defense, the same . . . theory that forms [the] Plaintiff's claims in this [federal] lawsuit." Defendant's Brief at 5.

[11] The state-court case was stayed, awaiting a relevant New Jersey Supreme Court decision. See Defendants' Brief at 3, 5; Plaintiffs' Opposition at 3 n.1. The New Jersey Supreme Court handed down that decision around four weeks ago. See Diana v. LVNV Funding LLC, 264 N.J. 354 (2026).

[12] The Defendant is confident enough in its position that it seeks sanctions against the Plaintiff, essentially for taking the final-judgment-is-required line. See Defendant's Brief at 6-7. That application is denied. The issues here are knottier than either side's papers suggest.

Who has it right? Is a final judgment needed? Can case 2 be dismissed based on case 1 --- even though no judgment has yet been issued in case 1?

This Part works through these questions.

### A. The Question Is Open

Because the entire controversy doctrine is a matter of New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010); see also Riotto v. Fay Servicing, LLC, 740 F. Supp. 3d 400, 406 (D.N.J. 2024) ("In interpreting New Jersey preclusion law, this Court must apply the law as the New Jersey Supreme Court has laid it out.").

The New Jersey Supreme Court has not decided whether the entire controversy doctrine applies, as here, when no judgment has yet been entered.

This means that "this Court must predict how the New Jersey Supreme Court would answer the question." Howard v. Wells Fargo Bank, N.A., 733 F. Supp. 3d 352, 356 (D.N.J. 2024).

But before getting go with the prediction, take up a possible wrinkle, just below.

* * *

In 1991, in a case called Watkins, the New Jersey Supreme Court noted that the federal law of claim preclusion requires a "valid, final, and on the merits" decision --- and in the course of saying so, suggested that New Jersey law "requires the same three basic elements." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991); see also McNeil v. Legis. Apportionment Comm'n, 177 N.J. 364, 395 (2003) (same).

Some courts have taken the above from Watkins to indicate that the entire controversy doctrine is only triggered when there has been a "final" judgment. See, e.g., Schwartz v. Menas, 2025 WL 2985310, at *7 (N.J. Super. Ct. App. Div. Oct. 23, 2025); Sherman Ave. Condo. Ass'n v. Mejia, 2023 WL 3589104, at *6 (N.J. Super. Ct. App. Div. May 23, 2023); Schneider v. United States, 2007 WL 4440976, at *4 (D.N.J. Dec. 17, 2007); Truong v. Lakeland Bank, 2025 WL 18195, at *3 (N.J. Super. Ct. App. Div. Jan. 2, 2025).

On this read, Watkins means that just as a "final" judgment is a "basic element" of federal preclusion law, it is also a necessary component of New Jersey's entire controversy doctrine.

But this goes too far, the Court concludes. Because the referenced part of Watkins was dicta, and twice over.

First, Watkins did not purport to construe or apply New Jersey preclusion law. Watkins was a federal preclusion law case. See Watkins, 124 N.J. at 412. So too much should not be made of what Watkins said, almost as an aside, about New Jersey preclusion law.[13]

And second, Watkins may not have been discussing the relevant part of New Jersey preclusion law. The relevant passage:

> We turn . . . to the federal law of claim preclusion. Federal law requires the same three basic elements as New Jersey law: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981); In re Energy Coop., [Inc.,] 814 F.2d [1226,] 1230 [(7th Cir. 1987)]; see Velasquez[ v. Franz,] 123 N.J. [498,] 505-06[ (1991)]; Roberts v. Goldner, 79 N.J. 82, 85 (1979).

Watkins, 124 N.J. at 412.

The above is likely best taken as an effort to compare (i) federal res judicata law to (ii) New Jersey res judicata law. Not federal res judicata law to New Jersey entire controversy law.[14] ("Claim preclusion" and "res judicata" are generally taken as synonyms. See Res Judicata, Black's Law Dictionary (12th ed. 2024); see also Hui Lin Wei v. Cai Feng Chen, 2016 WL 3504517, at *3 (N.J. Super. Ct. App. Div. June 28, 2016).)

---

[13] See Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.").

[14] On the relationship between res judicata law and entire controversy law, see footnote 16.

As Watkins put it, "[w]e turn . . . to the federal law of claim preclusion. Federal law requires the same three basic elements as New Jersey law[.]" 124 N.J. at 412.

In context, it seems that the second reference to "[f]ederal law" was an effort to avoid clunky repetition --- shorthand for the fuller phrase that came directly before it, "the federal law of claim preclusion."

And if "[f]ederal law" was just a quick-and-easy stand-in for "the federal law of claim preclusion," then "New Jersey law" should be understood symmetrically. As shorthand, too --- for "the New Jersey law of claim preclusion."

And note further: as to the requirements of New Jersey law in this area, Watkins cited two other New Jersey Supreme Court cases --- Velasquez and Roberts. But those cases zeroed in on New Jersey res judicata law. See Velasquez v. Franz, 123 N.J. 498, 505-15 (1991); Roberts v. Goldner, 79 N.J. 82, 84-86 (1979). Neither said anything about the state's entire controversy law.

Would it make sense to emphasize that the entire controversy doctrine is different than res judicata, as Watkins did[15] --- while also indicating that the two bodies of law share the same "basic elements"? Probably not. On balance, the better read of the Watkins dicta is likely that the New Jersey Supreme Court was speaking about res judicata for federal law purposes and res judicata for New Jersey law purposes. Those are what share the same "basic elements."

Bottom line: the relevant passage in Watkins likely did not aim to speak about New Jersey entire controversy doctrine --- and it therefore does not put to rest the question of whether the doctrine can apply before a judgment has been entered.[16]

---

[15] See Watkins, 124 N.J. at 412 ("In limited circumstances, the entire controversy doctrine may preclude an action that is not otherwise precluded by the federal law of res judicata.").

[16] The reading of Watkins set out in the text presupposes that res judicata and entire controversy are genuinely distinct doctrines --- and not just interchangeable synonyms. Some cases support the distinct-doctrines reading. See, e.g., Mills v. Golden Nugget Online Gaming, Inc., 2023 WL 8520319, at *4-5 (N.J. Super. Ct. App. Div. Dec. 8, 2023); G.W. v. Am. Day CD

Accordingly, without an on-point New Jersey Supreme Court decision that resolves the question, the Court must predict how the New Jersey's high court would proceed.

**B. Kaselaan**

"[A] federal court attempting to forecast state law" may consult a range of sources to help to predict "how the highest court in the state would decide the issue at hand." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980).

Among those sources, the decisions of state intermediate appellate courts loom particularly large. See, e.g., Wayne

---

Ctrs., LLC, 2021 WL 1828108, at *2 (N.J. Super. Ct. App. Div. May 7, 2021); N.J. Dep't of Env't Prot. v. Occidental Chem. Corp., 2012 WL 1392597, at *25-26 (N.J. Super. Ct. App. Div. Apr. 24, 2012); N.J. Citizen Action, Inc. v. County of Bergen, 2011 WL 3300181, at *5-6 (N.J. Super. Ct. App. Div. Aug. 3, 2011); see also Dalnoky v. Atl. City Bd. of Educ., 2026 WL 191236, at *5 (N.J. Super. Ct. App. Div. Jan. 26, 2026) ("the entire controversy doctrine . . . is a broader . . . doctrine than res judicata"); Falad Props., LLC v. Borough of Atl. Highlands, 2025 WL 3222306, at *5 (N.J. Super. Ct. App. Div. Nov. 19, 2025) ("[t]he [entire controversy] doctrine's preclusive effect is broad, more so than res judicata"); Kozyra v. Allen, 973 F.2d 1110, 1111 (3d Cir. 1992). But other cases do not see much daylight. They treat the entire controversy doctrine as simply New Jersey's version of res judicata. See, e.g., Bank Leumi, 243 N.J. at 226 ("In New Jersey, it is the entire controversy doctrine that governs [claim] preclusion."); Sexton v. State, 2026 WL 237331, at *4 (N.J. Super. Ct. App. Div. Jan. 29, 2026) ("'The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name.'") (quoting Long v. Lewis, 318 N.J. Super. 449, 459 (App. Div. 1999)); Schwartz, 2025 WL 2985310, at *6 ("The [entire controversy doctrine] . . . is a procedural rule characterized as New Jersey's specific application of traditional res judicata principles."); May Funeral Home, Inc. v. Est. of Saitta, 2023 WL 1938447, at *4 (N.J. Super. Ct. App. Div. Feb. 13, 2023) ("[t]he entire controversy doctrine . . . is a form of claim preclusion"). Watkins seems to fall into the first camp. See footnote 15.

Moving & Storage of N.J., Inc. v. School Dist., 625 F.3d 148, 154 (3d Cir. 2010).[17]

The foundational intermediate appellate decision is Kaselaan & D'Angelo Associates, Inc. v. Soffian, 290 N.J. Super. 293 (App. Div. 1996).

There, a plaintiff sued in federal court. See id. at 296. And then filed a case in state court. See id. at 296-97. The defendants in the state-court action moved to dismiss, citing the entire controversy doctrine. See id. at 297.

The Kaselaan court held "that the entire controversy doctrine does not require the dismissal of [the state court] action[.]" Id. at 298. That "doctrine only precludes successive suits involving related claims" and "does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." Id. at 299.

* * *

On one reading, Kaselaan rests on a simple rule: when there is no final judgment in a case, there can be no entire controversy preclusion based on that case.

When it comes to "multiple pending actions arising out of the same or related operative facts," id., there are several "appropriate means" for managing things --- but the tough medicine of dismissal, the remedy envisioned by the entire controversy doctrine, is not on Kaselaan's list. See id. at 300-01.

* * *

The first interpretation of Kaselaan, set out just above, seems like the most natural way to understand the case.

But a second reading is also possible.

---

[17] See also Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 279 (D.N.J. 2023); Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 739 F. Supp. 3d 259, 266 (D.N.J. 2024); G.E.M.S. Partners LLC v. AmGUARD Ins. Co., 742 F. Supp. 3d 410, 420 (D.N.J. 2024); Farrow v. U.S. Specialty Ins. Co., 755 F. Supp. 3d 550, 559 (D.N.J. 2024); Badalamenti v. Resideo Techs., Inc., 807 F. Supp. 3d 414, 421 (D.N.J. 2025); Pim Brands, Inc. v. New Cibo Vita LLC, 806 F. Supp. 3d 480, 486 (D.N.J. 2025).

Kaselaan might mean that when two cases are pending, and the first has not reached judgment --- dismissal under the entire controversy doctrine is not mandatory. Dismissal might be available. But it is not necessary. The doctrine, per Kaselaan, does not "require dismissal when multiple actions involving the same or related claims are pending simultaneously." Id. at 299 (emphasis added). But it might allow it.

The entire controversy doctrine is a flexible, equitable doctrine.[18] And the second interpretation of Kaselaan is consistent with that approach. In the absence of a judgment in case 1, the court in case 2 may, but need not, dismiss the action. The second court has discretion to dismiss. But that does not mean it must exercise that discretion in one particular way or another.[19]

### C. **After Kaselaan**

As discussed in Part III.B, there are two plausible-enough readings of Kaselaan. And there are traces of each approach in the post-Kaselaan caselaw.

Work through that caselaw here.

---

[18] See, e.g., K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 70 (2002) (describing the entire controversy doctrine as "an equitable . . . doctrine") (cleaned up); see also Dimitrakopoulos, 237 N.J. at 99 ("The entire controversy doctrine . . . is constrained by principles of equity.").

[19] Cf. Dimitrakopoulos, 237 N.J. at 114 ("[T]he boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases.") (cleaned up); Prevratil v. Mohr, 145 N.J. 180, 190 (1996) ("Ultimately, the application of the [entire controversy] doctrine depends on the exercise of judicial discretion in the facts of each case."); Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995) ("[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case.").

**1. Judgment Needed**

Plenty of cases applying New Jersey's entire controversy doctrine hold that, consistent with the first interpretation of Kaselaan, the doctrine can be applied in case 2 only if case 1 is over and done with --- if it has ended in a judgment.

In Arena v. Borough of Jamesburg, 309 N.J. Super. 106 (App. Div. 1998), for example, the appellate court[20] indicated that "[t]he entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled." Id. at 111 (emphasis added).

And other New Jersey appellate cases land in roughly the same place.

Some are from a couple of decades ago. See, e.g., Greenbaum v. Tulley, 2005 WL 2364758, at *13 (N.J. Super. Ct. App. Div. Sept. 29, 2005) ("The doctrine does not apply to preclude a successive action if the first action did not result in any adjudication on the merits."); Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab Inst., 389 N.J. Super. 130, 140-41 (App. Div. 2006) ("'The entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled.'") (quoting Arena, 309 N.J. Super. at 111); Whitebrier Beach Club, Inc. v. Borough of Avalon, 2007 WL 776751, at *1 (N.J. Super. Ct. App. Div. Mar. 16, 2007) (same); Lamarr v. City of Newark, 2009 WL 2177233, at *3 (N.J. Super. Ct. App. Div. July 23, 2009) ("The entire controversy doctrine bars only successive lawsuits involving related claims; it does not bar claims that are pending in different courts at the same time.").

Other are more recent. See, e.g., Shimko v. Marter, 2015 WL 7557539, at *3 (N.J. Super. Ct. App. Div. Nov. 25, 2015); Habitate, LLC v. City of Bridgeton, 2017 WL 3091761, at *4 (N.J. Super. Ct. App. Div. July 21, 2017); Maas v. Hoyt Corp., 2017 WL 4640060, at *3 (N.J. Super. Ct. App. Div. Oct. 17, 2017); DePaul v. Est. of DePaul, 2019 WL 1831554, at *6 (N.J. Super. Ct. App. Div. Apr. 25, 2019); GAR Disability Advocs., LLC v. Orak, 2019 WL 3559419, at *4 (N.J. Super. Ct. App. Div. Aug. 6, 2019) ("The

[20] As to the importance of looking to state intermediate appellate cases in predicting how a state supreme court will rule, see Wayne Moving & Storage, 625 F.3d at 154. And also the cases at footnote 17.

entire controversy doctrine does not apply to preclude a successive action if the previous action did not result in an adjudication on the merits."); Elevator Medic Corp. v. Litana Dev., Inc., 2022 WL 244120, at *2 (N.J. Super. Ct. App. Div. Jan. 27, 2022) ("the entire controversy doctrine does not preclude a second action where the first action did not result in an adjudication on the merits").

Applying New Jersey law, federal courts have often come to the same conclusion about the need for a judgment.[21] See, e.g., Sanabria v. Nwachukwu, 2026 WL 1894195, at *4 (D.N.J. July 1, 2026); Khawam v. Allen, 2025 WL 654107, at *12 (D.N.J. Feb. 27, 2025); Ponce v. Wilmington Sav. Fund Soc'y, FSB, 2023 WL 4197179, at *5-6 (D.N.J. June 26, 2023); Federated Mut. Ins. Co. v. City of Ocean City, 2022 WL 951287, at *6 (D.N.J. Mar. 30, 2022); Gould v. JPMorgan Chase Bank, N.A., 2021 WL 4272858, at *5-6 (D.N.J. Sept. 21, 2021); Farah v. LaSalle Bank N.A., 2021 WL 363703, at *3 (D.N.J. Feb. 3, 2021); Aliperio v. Bank of Am., N.A., 2016 WL 7229114, at *11 (D.N.J. Dec. 13, 2016); Peavy v. U.S. Bank Tr., N.A., 2016 WL 3566965, at *4 n.6 (D.N.J. June 30, 2016); Sheldrick v. Wells Fargo Bank, N.A., 2015 WL 5098180, at *3 (D.N.J. Aug. 31, 2015); Freightmaster USA, LLC v. Fedex, Inc., 2015 WL 1472665, at *4-5 (D.N.J. Mar. 31, 2015); Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp. 2d 535, 541 (D.N.J. 2008); Found. Credit Funds, LLC v. Branch Banking & Tr. Co., 2006 WL 3780677, at *1 n.1 (D.N.J. Dec. 21, 2006); BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth., 2006 WL 3591256, at *2 (D.N.J. Dec. 8, 2006).

And the Third Circuit has held that the question of "whether a New Jersey court would give preclusive effect to a litigation that has not yet been concluded" has "been squarely addressed and answered in the negative in Kaselaan." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997).

Therefore, the court of appeals held in Rycoline, "the [e]ntire [c]ontroversy [d]octrine does not preclude the initiation of a

[21] When it comes to predicting how a state supreme court might rule, "[t]he decisions of federal courts 'that reach and resolve the open state law question' can help to inform a court's prediction as to what state law is." Badalamenti, 807 F. Supp. 3d at 424 (citation omitted); see also Schulman, 684 F. Supp. 3d at 283; Navigators, 739 F. Supp. 3d at 266-67; Pim Brands, 806 F. Supp. 3d at 487.

second litigation before the first action has been concluded." Id. at 889.

And Rycoline is backed up by a pair of recent (though unpublished) Third Circuit decisions. See Crisafulli v. Township of Branchburg, 2023 WL 3845304, at *2 (3d Cir. June 6, 2023) (noting that the entire controversy doctrine "applies and bars a party's subsequent suit so long as . . . the first proceeding produced a final judgment") (citing Rycoline, 109 F.3d at 888-89); Williams v. Litton Loan Servs., 788 F. App'x 819, 822 (3d Cir. 2019) ("The [entire controversy] doctrine applies when . . . the judgment in the first action is valid, final, and on the merits[.]").[22]

* * *

This is a mountain of authority. But there are also cases that pile up on the other side of the valley. Look to those next.

### 2. Judgement Not Needed

Intermediate appellate decisions are a key tool for predicting state law. See Part III.B. As noted, many hold that the entire controversy doctrine is not relevant in case 2 if there is no final judgment in case 1.

But there are some cases that run the other way --- that suggest that a judgment is not needed in case 1 before the entire controversy doctrine can be applied in case 2.

These decisions stick to the second, looser reading of Kaselaan --- the reading that emphasizes equitable flexibility.

In J-M Manufacturing Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447 (App. Div. 2015), for example, the appellate court held "that there should not be a mechanistic application of the entire controversy doctrine." Id. at 459. Rather, "[t]he thrust of Kaselaan, followed in [Archbrook Laguna, LLC v. Marsh, 414 N.J. Super. 97 (App. Div. 2010)], is that the entire controversy doctrine must be applied in order to achieve

---

[22] Note also a published decision that references the issue in passing. See U.S. ex rel. Charte v. Am. Tutor, Inc., 934 F.3d 346, 352 (3d Cir. 2019) ("[T]he entire controversy doctrine applies 'only when a prior action based on the same transactional facts has been tried to judgment or settled.'") (quoting Arena, 309 N.J. Super. at 111).

fairness." Id. at 460. Therefore, "the argument that the entire controversy doctrine does not apply to simultaneous proceedings" would "misinterpret the holding in [Kaselaan]." Id. at 458, 460.

And J-M Manufacturing is no one-off.

Look to another recent appellate decision, Allstate New Jersey Insurance Co. v. Carabasi, 2023 WL 2998455 (N.J. Super. Ct. App. Div. Apr. 19, 2023). It pushed aside the judgment-required rule: "[The plaintiff] contends the [entire controversy doctrine] does not apply to its Burlington County complaint because 'the Gloucester County action has not been tried to judgment or settled.' We disagree." Id. at *6. Per Carabasi:

> Although we have recognized certain circumstances in which it is inappropriate to dismiss a complaint based on the [entire controversy doctrine] prior to an adjudication on the merits in the first action, we have rejected such a blanket prohibition on the doctrine's applicability in all cases.

Id.; see also Archbrook Laguna, 414 N.J. Super. at 107 ("a bright line rule . . . would encourage the type of forum shopping and fragmentation of controversies the entire controversy doctrine was intended to preclude").

### D. The Prediction

As laid out above, the Court needs to predict what the New Jersey Supreme Court would hold as to whether the entire controversy doctrine applies in case 2 only where a judgment has already been entered in case 1. See Part III.A.

Out of the gate, the answer seems to be "yes."

First, that seems to be where the bulk of the caselaw is. See Part III.C.1. And second, that was how the Third Circuit ruled in 1997, in Rycoline. See id.

These seem to be solid pillars for a decision here. But each may be a bit shakier than it first seems.

The next sections explain why.

* * *

There was a time when the rulings of state intermediate appellate courts were treated as all but dispositive when it

came to predicting what a state supreme court would do. See, e.g., Henry J. Friendly, In Praise of Erie --- and of the New Federal Common Law, 39 N.Y.U. L. Rev. 383, 400-01 (1964).

But even though that is not the law today,[23] the pronouncements of state intermediate appellate courts still have significant "predictive value." In re RGN-Grp. Holdings, LLC, 2024 WL 1110385, at *4 (3d Cir. Mar. 14, 2024). Such decisions remain a "lodestar," Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 739 F. Supp. 3d 259, 266 n.6 (D.N.J. 2024), when it comes to state-law predictions.

And that makes it hard to know what prediction to make here.

A large number of intermediate appellate cases support the judgment-required understanding of the entire controversy doctrine. See Part III.C.1.

But "there is another [set of] intermediate appellate decision[s] pulling in the exact opposite direction." Navigators, 739 F. Supp. 3d at 266 n.6.

What to make of the second group? J-M Manufacturing (2015) and Carabasi (2023) are recent and closely reasoned. And they are propelled forward by a powerful and long-running current --- that runs through Archbrook Laguna (2010) and one interpretation of Kaselaan (1991), and that finds its wellspring in flexibility and equity, some of the reasons the entire controversy doctrine is there in the first place.

That is a lot to toss aside. But is that what the New Jersey Supreme Court would do? Maybe. After all, while J-M Manufacturing and Carabasi flow together, the other stream of cases is broader and deeper --- and runs the other way. Moreover, a crisp judgment—is-required rule generates predictable results. In the preclusion area, a simple on/off switch (no judgment, no preclusion) may be better than a looser equitable standard --- a dimmer that might get set a bit differently in each case. Cf. Geoffrey C. Hazard, Jr., An Examination Before and Behind the "Entire Controversy" Doctrine, 28 Rutgers L.J. 7, 8 (1996) (criticizing the doctrine because of the "uncertainty" it brings).

---

[23] See, e.g., Moses v. Dist. Att'y, 133 F.4th 251, 260 (3d Cir. 2025); Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 98 F.4th 463, 467 & n.2 (3d Cir. 2024).

But in the end --- it is tough to say how the New Jersey Supreme Court would rule.

The two readings of Kaselaan are disparate threads that run through the entire controversy caselaw, each pulling down their own course. But the New Jersey Supreme Court might not opt to choose between them. Rather, it might aim to braid them together --- and hold that the entire controversy doctrine (i) generally does not apply when no judgment has been entered (consistent with the first reading of Kaselaan), except that (ii) it can be applied, even without a judgment, when there are case-specific equitable reasons to do so (consistent with the second reading of Kaselaan).[24]

Predicting where the New Jersey Supreme Court might land in the face of conflicting appellate opinions is difficult. And all the more so because of the possibility that the Supreme Court might not choose one fork in the road or the other --- but rather might opt for a blended, middle-ground approach.

* * *

But maybe, it might be argued, a prediction as to where the New Jersey Supreme Court will go is unnecessary.

After all, the Third Circuit in Rycoline made its own prediction --- that under New Jersey entire controversy law, a judgment in case 1 is needed before it can cut off case 2.

The Third Circuit's decisions are binding. See United States v. Mitlo, 714 F.2d 294, 298 (3d Cir. 1983). And as to predictions of New Jersey law, too. Cf. Factors, Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981).

[24] As when the first case is very far along but has not quite got to judgment. Cf. U.S. ex rel. McDermott v. Life Source Servs., LLC, 2022 WL 2168230, at *3 (D.N.J. June 15, 2022). Or when there are concerns, say, about strategic efforts on the part of a litigant. Maybe the second litigation is a way to forum shop away from an adverse pre-trial ruling in the first case. Or to get out from under a procedural bar imposed in the first case (because of, for example, a missed deadline). Or maybe the second case is an effort to vex one's adversary --- by prolonging things, or by running up legal bills.

So is Rycoline the end of the road?[25] Maybe not. The problem is this: Rycoline predates the New Jersey intermediate appellate decisions discussed in Part III.C.2, J-M Manufacturing and Carabasi --- and those are the two key data points that push the other way, that suggest, against Rycoline, that the New Jersey Supreme Court might not hold that the entire controversy requires a judgment.

Rycoline "look[ed] to the development of th[e] [entire controversy d]octrine by the New Jersey [intermediate appellate] courts to determine whether a New Jersey court would give preclusive effect to a litigation that has not yet been concluded." Rycoline, 109 F.3d at 887 (relying on Kaselaan).

But because it was decided in 1997, some grist was necessarily missing from Rycoline's mill. Rycoline could not account for the two appellate cases that go the other way --- because those two cases were decades away from being decided.

What to do in this circumstance?

"District courts in this circuit have reached conflicting decisions regarding their authority to depart from Third Circuit precedent interpreting state law that has later been contradicted by intermediate state courts." Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 2025 WL 2218218, at *4 (D.N.J. Aug. 5, 2025).

Some have held that "[d]istrict courts are not bound by a court of appeals' prediction when intermediate state appellate courts

[25] As noted above, see Part III.C.1, the Third Circuit has also embraced the judgment-required rule in Crisafulli v. Township of Branchburg, 2023 WL 3845304 (3d Cir. June 6, 2023) and Williams v. Litton Loan Services, 788 F. App'x 819 (3d Cir. 2019). But those are on a different footing. They are unpublished, and the court of appeals "traditionally do[es] not regard [its] unpublished decisions as having precedential value." United States v. DeRewal, 10 F.3d 100, 102 n.1 (3d Cir. 1993); see also United States v. James, 928 F.3d 247, 254 n.5 (3d Cir. 2019). Moreover, the single-sentence reference to a finality requirement in United States ex rel. Charte v. American Tutor, Inc., 934 F.3d 346 (3d Cir. 2019) is plainly dicta. See id. at 352. And "[i]t is settled law that dictum in a decision of the court of appeals is not binding on lower courts[.]" Griswold v. Coventry First LLC, 2015 WL 710365, at *9 (E.D. Pa. Feb. 18, 2015).

indicate that the prediction was wrong." Lovelace v. Nationwide Mut. Ins. Co., 2018 WL 3818911, at *3 (E.D. Pa. Aug. 10, 2018).[26]

Others disagree, and treat the court of appeals' state-law prediction as "binding on the district courts in the Third Circuit until either the [relevant state] supreme court or the Third Circuit rules otherwise." Doe v. Trs. of the Univ. of Pa., 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017) (cleaned up).[27]

---

[26] See also, e.g., Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 427 (E.D. Pa. 2015) ("A predictive ruling by the Third Circuit is generally binding on the district court. However, when the [state] intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction."); McDonough v. State Farm Fire & Cas. Co., 365 F. Supp. 3d 552, 560-61 (E.D. Pa. 2019) (declining to follow a Third Circuit decision in light of "intervening changes in the law" in the state intermediate appellate courts); Sweitzer v. Oxmaster, Inc., 2010 WL 5257226, at *4 (E.D. Pa. Dec. 23, 2010) ("Of course, the Court must follow the Court of Appeal's prediction . . . as a general rule, except when the . . . state intermediate appellate court's decisions subsequently indicate that prediction has not come to pass."); Gen. Nutrition Corp. v. Gardere Wynne Sewell, LLP, 2008 WL 4411951, at *2 n.3 (W.D. Pa. Sept. 23, 2008) ("district courts are bound by the prediction of the court of appeals as to state law unless later state court decisions indicate that the Court of Appeals' earlier prediction was in error") (cleaned up); Silva v. Rite Aid Corp., 416 F. Supp. 3d 394, 402 (M.D. Pa. 2019) ("[d]istrict courts need not adhere to a predictive ruling if state courts later prove that prediction to be wrong").

[27] See also, e.g., Mount Prospect Chiropractic Ctr., 2025 WL 2218218, at *3-5 (holding that "this [c]ourt remains bound by the Third Circuit's opinion and judgment," even in the face of an Appellate Division decision that "expressly disagreed with the Third Circuit's prediction"); Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 489 (E.D. Pa. 2016) ("[A] prior [Third Circuit] prediction remains controlling . . . unless a U.S. Supreme Court decision requires modification or the Third Circuit sitting en banc overrules the prior decision."); McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) ("[W]hen the Third Circuit has predicted how the [state] supreme court will rule on an issue, [a federal district court] is bound by that precedent unless one of those two courts subsequently rules otherwise."); In re AZEK Bldg.

* * *

In short:

To determine if the entire controversy doctrine might apply here, a prediction must be made as to whether a judgment is required.

But coming to a decision on that open question is doubly difficult.

First, because this Court's prediction would need to account for the conflict between New Jersey's intermediate appellate decisions.

And second, because this Court would need to grapple with the status of Rycoline --- and doing that requires taking on a question that has divided the district courts.

How to proceed? Take that up just below.

## IV. Conclusion and Next Steps

Federal courts are expected to avoid resolving open legal questions when they can. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[n]eedless decisions of state law should be avoided").

---

Prods., Inc., Mktg. & Sales Pracs. Litig., 82 F. Supp. 3d 608, 622 (D.N.J. 2015) ("It is a well-established principle of federalism that federal district courts are bound by their controlling circuit court's decisions concerning how a state supreme court would rule, unless and until the state supreme court rules differently."); Keslosky v. Borough of Old Forge, 66 F. Supp. 3d 592, 626 (M.D. Pa. 2014) ("When an issue is unsettled under Pennsylvania case law, we are bound by the Third Circuit's determination when it has predicted how the Pennsylvania Supreme Court will decide the issue."); Heindel v. Pfizer, Inc., 381 F. Supp. 2d 364, 386 (D.N.J. 2004) ("[S]ince the Court of Appeals has predicted how the Pennsylvania Supreme Court will rule, the lower (Pennsylvania) courts' decisions are . . . irrelevant for the purposes of this discussion."); cf. Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law[.] But decisions of intermediate state courts lack similar force; they, too, are just prognostications.").

And here, it may be possible to sidestep the need to work through the tricky entire controversy issues set out above. This section explains.

* * *

The entire controversy doctrine may or may not apply here because the state court case has not yet culminated in a judgment.

But one way or another, the state court case was filed before this one.

So why not simply stay this case under the first-filed rule?[28]

As the Supreme Court set out the rule around 200 years ago: "In all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." Smith v. McIver, 22 U.S. (9 Wheat.) 532, 535 (1824).

Here, the "first" court is the state court. So why should this Court not stay its own proceedings,[29] to allow the state court to finish out its work?

As the Third Circuit has put it:

> [A] stay retains the sensitivity for concerns of federalism and comity . . . while preserving [the parties'] right to litigate their claims in the federal forum should the [state] courts, for jurisdictional or other reasons, fail to adjudicate them.

Chavez v. Dole Food Co., 836 F.3d 205, 220 (3d Cir. 2016) (cleaned up).

And per the Supreme Court, though in a different context:

[28] The first-filed rule can be raised by the Court sua sponte. See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 258 n.1 (4th Cir. 2013); see also Ratliff v. La. State, 2024 WL 4346513, at *2 (E.D. La. Sept. 30, 2024); CC/Devas (Mauritius) Ltd. v. Air India, Ltd., 2022 WL 355759, at *7 (S.D.N.Y. Feb. 4, 2022).

[29] A stay, and not dismissal, is the typical way to handle the later-filed case. See Muhammad v. State Farm Indem. Co., 719 F. Supp. 3d 397, 411 (D.N.J. 2024); see also M.Z. v. N.J. State Parole Bd., 2026 WL 1831702, at *1 (D.N.J. June 25, 2026).

> Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided. Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942).

Against this backdrop, the Court's inclination would be to stay this case, and then to check in every 60 days on the status of the state-court litigation.[30]

A stay would give the Plaintiff the opportunity to press in state court the claims he is advancing here. It would "avoid wasted judicial efforts, conflicting judgments, and unnecessary friction between courts." Chavez, 836 F.3d at 220. And it would allow all of this to be accomplished without having to resolve the complex questions set out above, the ones that are implicated by the entire controversy doctrine as it presents itself in this case.[31]

Before going this route, the Court would plan to seek out the parties' views. Before doing that, though, the Court will now pause --- pending resolution of last week's order at 26 Mc. 60 (RMB), which may result in this case being consolidated with another one.

IT IS on this 4th day of August, 2026, **SO ORDERED.**

S/ Michael Farbiarz
Michael E. Farbiarz, U.S.D.J.

[30] If the periodic check-ins were to suggest that there is reason to lift the stay, that could then be assessed.

[31] And note: even if the Court were to decide that the entire controversy doctrine does not apply here --- it would almost surely, at that point, be inclined to consider the first-filed rule.